Good morning, ladies and gentlemen. We're now ready for the third case, and Mr. Cloud, you may proceed. Thank you, Your Honor. May it please the Court, my name is Jared Cloud, appearing for Appellants Kenneth and Artis Heiting. A trustee made a mistake. It sold trust-owned stock. It had no power, authority, or right to to remedy its error, as it had a fiduciary obligation to do. The trustee reversed the transaction in the only way possible, by using the proceeds of the sale to repurchase the improperly sold stock, placing the trust in the same position it occupied before the trustee's mistake. Now, if the sale and repurchase had taken place in the same calendar year, under the doctrine of rescission, the taxpayer would not have even been required to report the income from the reverse sale at all. But because the sale and repurchase took place in different calendar years, the taxpayer sought a refund of the income tax paid on the gain of the sale, which the government rejected, and the taxpayer filed suit for the refund. Prior to the District Court's decision below, the only reported decision on whether Section 1341, Claim of Right Relief, would be available when a trustee has repurchased an improperly sold trust asset, was the 1982 decision of the Northern District of Illinois in First National Bank of Chicago versus United States. And in that case, it was the government who argued. And the Court agreed that the proper remedy would be under the Claim of Right statute, Section 1341, with relief in the year of the repayment instead of in the year of the original sale, which is what the trustee in that case argued. In the instant case, by contrast, the hidings sought relief under Section 1341 from the start. They are the taxpayers here rather than the trustee is the trustee administering their retirement savings. And the trust is a grantor trust, which means that the hidings report the trust income deductions and credits on their individual return rather than on a separate return filed by the trustee. They're the only beneficiaries of the trust at this point. The District Court here dismissed the hidings claim for refund, erroneously reasoning that the hidings ability to consent or ratify the trustee's error obviated the trustee's obligation to remedy, meaning that the repurchase of the shares were in the District Court's opinion voluntary, was a voluntary payment rather than involuntary as required under Section 1341. The District Court's judgment should be reversed because just like in the trustee in First Chicago, the hidings trustee owed them a duty to follow the terms of the trust, including the restrictions on the sale of the restricted stock. And when the trustee recognized its mistake, it had a fiduciary obligation to reverse it by repurchasing that same stock. The District Court distinguished First National Bank of Chicago on the grounds that the grantor trust rules simply shift the tax reporting and payment obligations onto the grantors. It doesn't change the duties, the rights, or the remedies that run between trustees and beneficiaries under state law. The District Court also distinguished First Chicago on the basis that the beneficiaries in that case had sued the trustees and obtained a judgment requiring the trustee to repurchase the stock it had sold out of the trust. The hidings trustee here recognized its error and undertook to remedy it in the only way that would put the trust back into the position that it had been in, by repurchasing the stock. Did it put the owners of the trustee back in their same position financially? It should have, Your Honor. The issue was the improper sale of the stock and the trustee repurchased the same stock. What about the taxes? That is the basis for the claim for refund, Your Honor. Does the bank have any responsibility here? Your Honor, the tax code provides a remedy for the payment of the tax in the first year. That's Section 1341 relief that we're seeking. The grantors of the trust paid the tax in the year that they received it, and when the transaction was reversed, they asked for the refund. I understand that. I'm asking if the bank had any responsibility, because they're the ones who mistakenly sold the stock. The responsibility was to remedy the improper sale, Your Honor, and that's what they did. Whether there's some other responsibility hasn't been an issue here. Not yet. Well, Your Honor, I don't know that it would ever be an issue, because the entire point of Section 1341, as the Northern District of Illinois decided almost 40 years ago, applies when the trustee sells the stock in violation of the trust instrument and then remedies that error by repurchasing it. Thank you. There is no meaningful difference between what the court ordered in the First National Bank of Chicago case and what the trustee did here. Thank you. The district court's argument that the hidings had the ability to consent or ratify the actions of the trustee would not simply be limited to revocable trusts like the Hidings Trust, but even as shown by the cases cited by the district court, could apply to irrevocable trusts or the beneficiaries of which also have the ability to consent to ratify a trustee's mistake and contradicts several decades of circuit court decisions that have found that even a taxpayer who owns a controlling share or 100% of the outstanding stock of a corporation that was the original payor or the entity to whom repayment was ultimately made was not enough to deem that repayment voluntary. So control or the power to consent or to ratify however you want to describe it isn't a dispositive factor here. And the repurchase of the shares as shown by First Chicago as shown by the Wisconsin trust code is the appropriate remedy for storing the improperly sold asset to the trust itself. In addition, the government has sought on appeal to add additional requirements to the to the elements of section 1341, first by contending that the taxpayer and the person that received and later restored the item of income must be exactly the same person. I think we disposed of that in the briefs, but just to summarize, the Internal Revenue Code's definition of taxpayer is a person who owes a tax liability or the person who pays the tax liability. It doesn't necessarily require exact identity one way or the other. In the Rob Evans and Associates case, which the government has relied on, the taxpayer seeking the refund in that case was a receiver from an insolvent corporation. In the district court, the IRS challenged the receiver's ability to seek a refund under section 1341 on the grounds that the taxpayer was the original corporation. The district court disagreed, found that the receiver did stand in the shoes of the original taxpayer, and the government conceded that issue on appeal. Just briefly, I see I'm into the time I've reserved for rebuttal. The government has also argued that there is a requirement that the repayment be made to the actual owner or superior claimant that does not appear in the statute. And again, as shown by the first Chicago case, the claimant were the beneficiaries of the trust, not the party that had purchased the trust asset. And the final additional requirement is the issue of whether hidings should have pled in their complaint specific sections of the Internal Revenue Code under which they sought their credit. Their refund, our contention that it's not required for purposes of seeking the credit when that's the basis for the refund claim. But even if it were, that's not required to plead it under Rule 8 of the Federal Rules of Simple Procedure. And we identified in the papers a number of sections of the code under which they would seek that refund if that were in fact required, including Code Section 1211, which is specifically referenced for capital transactions in the Treasury regulations under Section 1341. Unless there are other questions, I'll reserve the rest of my time. Thank you, counsel. Thank you. Ms. Avetta, you may proceed. Thank you. Thank you, Your Honors. And may it please the Court, Julie Avetta for the United States. The claim of right doctrine is not a remedy for seller's remorse. The doctrine doesn't apply where a taxpayer simply wishes to reverse the effect of a transaction that they've come to regret. That's not what Section 1341 is for. Section 1341 provides relief to taxpayers who have paid tax on income that they then have a part with, because it wasn't their income. They didn't have an unrestricted right to it. It was someone else's. Taxpayers here could not allege that their right to income from the 2015 stock sale was restricted in any way. It was their income. No one else had a claim on it. They kept it in their hands. It didn't matter that they didn't authorize their trustee to sell the stock in 2015, and the trustee did that without authorization. It doesn't matter that the trustee bought more of those same stocks in 2016, also without taxpayer authorization. None of this makes that item of income in 2015 not theirs. None of this restricts their right to the income. None of this puts them within the ambit of the claim of right doctrine. The doctrine doesn't apply unless you can show that your right to income is not unrestricted, and that you are obligated to restore it, which means to turn it over or pay it back to someone else, and that you actually did. Taxpayers did not plead, and could not plead, any of these facts here. Their right to that income was absolute. They were not obligated to restore it to anybody. They never did restore it to anyone. They reinvested it in the stock market. The claim of right doctrine simply does not apply on these facts, and that's why taxpayers could not state a claim for relief under section 1341, and the district court correctly dismissed their complaint for failure to state a claim. It suggested that they were not required to plead a right to a deduction under the statute. I think the language of the statute fairly clearly establishes that they did, but looking more particularly at this transaction and how they attempt to shoehorn it into the statute, there are several points where they fail to fulfill statutory prerequisites. As I mentioned, they did not demonstrate that they lacked an unrestricted right to the income. They merely observed that their trustee breached their trust, and as Your Honor noted, there are remedies for that that do not involve the American taxpayer reimbursing you for your trustee's breach of trust. The statute 1341, which was enacted in 1954, is based on a preexisting doctrine, which says basically if you have paid tax on income, you can be entitled to relief in a later year if the deduction is available, if you are, I believe the language is, a judge to restore income or its equivalent, and that's where we get the requirement that there be a restoration of income to someone who does have the claim of right to that income because your right is restricted. Someone else now has a claim on that income. It's not purely yours. You must restore it as a prerequisite for 1341 to apply. 1341 is entitled computation of tax where taxpayer restores substantial amount held under claim of right. You don't even get into the statute if there's no restoration. You need to restore it under a legal obligation to do so. That also comes from both the text of the statute and the case law, and the computation of your recovery depends on how you restore that and to whom and under what code provision that restoration transaction was here. The trustee sold the forbidden fruit stocks in 2015 and realized again, these were highly appreciated stocks, realized again in excess of $5.6 million. That was income to the taxpayers. They recognized this on their return. They paid tax on it. So far, so good. In 2016, contrary to what's been represented, what happened was not that that transaction was rescinded. The the stock market and the trustee purchased the same stocks in the same quantities that it had sold in the previous year. Again, on the open market and for a different price than they were sold. So it can't even be characterized as a rescission because how would you treat them to basis in those stocks? Is it the purchase price in 2016? Are you trying to recoup all of that appreciation and put that toothpaste back in the tube? The- Counsel, what was the difference in the sale price and the purchase price? You know? We don't precisely know what they paid. That's not in the record per share. We do know that, and this is a footnote, one of the government's brief, the Bank of Montreal sold on October 28th, 2015, for $59.27 a share. And the 60,000 shares of Fidelity sold for $72.24 a share. On January 13th, 2016, the price of BMO ranged from $50.18 to a high of $52.46, much different from the $59.27 at which it was sold the previous year. Likewise, the Fidelity ranged from a low of $58.93 to a high of $50.70, again, vastly different from the $72.24 at which it was sold previously. So it's not a rescission. These are two unrelated transactions, except conceptually, where the trustee clearly was attempting to make whole taxpayers by putting back what it had taken out of the trust, which is these numbers of these shares of these publicly traded common corporate stocks. But importantly, that was not driven by any fiduciary duty, because the language of the trust forbade the trustee to transact in these stocks, purchase or sell without the express written authorization of the taxpayers. And taxpayers did not allege that either of the 2015 sale or the taxpayers. In fact, the taxpayers... I beg your pardon, Your Honor? Is that important to the result? Not to the result under the claim of rights doctrine, because the income was income to the taxpayers no matter what. But taxpayers have argued that... First, the argument goes in several links. The first link is our trustee was obligated under the fiduciary duty imposed on it by the Wisconsin Trust Code to make us whole, to fix this impermissible transaction. But then there's a leap to do that. The trustee then went out and made an unauthorized transaction and breached the trust again in an attempt to make them whole. And then they suggest that they should step into the shoes of the trustee and have the fiduciary duty to cure this breach be imputed to them, and that that should be read as a restriction on their right to the income. And that just doesn't hold up. The income was theirs. The income belonged to these two individual taxpayers. And the fact that they kept it in a trust and the trust was managed by the trustee and the trustee did not abide by the terms of the trust on more than one occasion is not material to the nature of that income, which was income to these taxpayers. Your Honor also asked if they were put back in the same position as they were in 2016 after the second transaction as they had been had the 2015 transaction not taken place. And I think on as we mentioned before, the stock prices were different, significantly different from the purchase transaction to the sale transaction. There was a difference in their cost basis in the stock from the initial holding to restoring that replenishing their holdings with the same number of shares. The cost basis of those new shares is probably going to be what they paid for it in 2016. And they don't recoup that appreciation, which they have now taken out and taken as income and paid tax on. Even recovering the tax isn't going to change that, even presuming that they could state a right to recover the tax, which they have not done here. Counsel, what have they lost? None of the worst. That's the bottom line. Why are they in worse? They're in worse position than they were prior to the bank selling the stock. Well, clearly the stock was important to them. They carved it out in the special forbidden fruit provision of the trust for reasons that were not pled and aren't on the record. We would be speculating. But if the stock was of some particular value to them because of maybe a previous working relationship with the companies or if they had, I'm speculating, but a plan potentially to pass it on to their heirs, there are a lot of reasons why that stock could have been uniquely important to the grantors of the trust that they would have crafted the trust instrument to protect that stock in particular. And losing that is potentially a harm in that their purpose is frustrated. And the reason for protecting this stock in that trust is something that they can no longer a purpose they can no longer carry out. I understand that part of it. What is the actual financial thing, at least the difference now as it stands that they're required to pay? They're not required to pay anything. Do they owe now that they didn't owe in the first place? Nothing, Your Honor. They owe nothing. The tax has been fully paid. They're seeking to recover the tax that they've paid. No one owes anything. How much? Well, was there a difference between the transaction as they originally paid it when they first earned the money and now where it stands now? Is there a difference? A financial difference. We could not. The difference would be that they have realized the capital gain and that now what they've reinvested that gain in the market and their holdings are the same as they were, but their basis is stepped up to the new purchase price. All right. Okay. But that gain has already been taxed and the tax has been paid. This is a refund suit. So such harm as they have sustained is, I would have to speculate again, only that they are unable to transact with their highly appreciated stock as they had planned to all along. They have, of course, revoked the trust as well. And whatever disruption that caused to their personal testamentary or other purposes, again, it's not a record. This was not pled. This was dismissed for failure to state a claim. We would be speculating, but these are things that might. Thank you, counsel. That's fine. Thank you. Thank you. We do not suggest that the first Bank of Chicago, first, I'm going to make sure that I cite it correctly. First National Bank of Chicago case is on point here. The district court noted that it was distinguishable on three counts that, first of all, the trust in First National Bank were not disregarded entities. They were themselves the taxpayers. So the income did not flow through to the beneficiary and the trust not only could sue and pay taxes and sue to recover taxes on behalf of their beneficiaries, but there were different questions of ownership of the income at issue there. There was a judgment of record in First National Bank that both imposed the restriction on the income from the sale, which was not publicly traded stock. It was a closely held corporation that had been sold and had been sold without complying with trust terms governing its sale. So they did order a rescission there and it did revert to status quo ante, which is not, again, what happened here. They reinvested a gain from a stock sale into the stock market. And the availability of a deduction in First National Bank was not at issue. Here, there is no deduction because there is no loss. The taxpayers sustained a gain and they paid tax on that gain. And there is no deductible transaction in their attempt to recover that tax that they could otherwise characterize under the Internal Revenue Code, section 1211, has to do with a capital loss. But there is no loss of any capital asset here. The capital, the gain was significant, to the contrary. And the tax burden on that, the tax imposed on that gain is not itself a deductible loss. That sort of a loop does not close here. If the court has no further questions, we would suggest that the district court correctly dismiss this case for failure to state a claim and we would ask that this court affirm. Thank you. Thanks, counsel. Mr. Cobb? You're, you're, we can't hear you. You're on mute. Somebody had to do it. Thank you, Your Honor. The, the, just a couple of quick points, unless the court has questions. The, the first issue, and this is, this is important, is the government's position that, that the, the gain on the sale, the original sale in violation of the trust instrument was their income, the hidings income, and it doesn't matter if the trustee made a mistake. That's, that's just wrong. If regard, regardless of whether this is a grantor trust or a non-grantor trust or a non-revocable trust or an irrevocable trust, the, the trustee has to carry out the terms of the governing instrument. And if the, if the, the, the trustee has, as a grantor trust, the hidings were simply paying, reporting and paying the income on the trust's and credits. The, the treatment here should be no different whether it's a grantor trust or a non-grantor trust. So if the trustee's mistake would require it to repay the, the, restore the asset to the trust in a non-grantor trust, we should be looking at the same thing here in a non-grantor trust. The, the financial difference, Your Honor asked about the request for the refund amount is approximately 1.3 million. As set forth in the complaint, that's the amount of tax that was, that the hidings paid on the gain. Council referenced that the funds, that the price of the shares had dropped. The case law is clear all the way through that the, in section 1341 cases, that, that may go to the amount of the 1341 relief that they are entitled to, but it doesn't, doesn't change their ability to request that relief. The damages that, or the relief that they are seeking here is a refund of a tax they did not need to pay. That's why they are in a different position than they should have been. The, the last thing is that council's representation as to what the basis is in the repurchase stock is not something that was briefed and wasn't an issue that has come up and is not clear at all from the record that that's, that that's the right answer. I see that I'm out of time, but if the court has questions, I'm happy to answer. Yeah, please. So, thank you, Mr. Cloud. Thank you, Mr. Vetter. The case will be taken under advisement.